UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 Pearl Street
New York, N.Y. 10007

**25CV4765**

Case No.

Tasha Chapman
     Pro Se Plaintiff,
       v.

U.S. Department of Housing and Urban Development  ("HUD"),
451 7th Street
S.W., Washington, DC 20410
Telephone: (800) 927-9275

Consultant to Government, Inc. ("CGI") (Official Capacity, corporate personhood)
Public Housing Authority
107 S. High Street
Columbus Oh 43215

Justin Davis (Official Capacity)
President Columbus Metropolitan Housing Authority
Public Housing Authority("PHA")
880 E 11th Avenue, Columbus, OH 43211

Felicia Holland, (Official Capacity)
Housing Specialist  Columbus Metropolitan Housing Authority
Public Housing Authority ("PHA")
880 E 11th Avenue, Columbus, OH 43211

United States Attorney General's Office
℅ Pam Bondi
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington DC 20530

     Defendant

1

Complaint

Part I.
Jurisdiction

28 U.S. Code § 1332 - Diversity of citizenship; amount in controversy; costs, 28 U.S. Code § 1331 - Federal question; 28 U.S. Code § 1333 - Admiralty, maritime and prize cases, 28 U.S. Code § 1343 - Civil rights, 28 U.S. Code § 1346 - United States as defendant, 28 U.S. Code §§ 2201(a) -2202, 5 U.S. Code § 705-706.

Part II
*Opening*

This is Plaintiff's sworn complaint for unlawful housing discrimination on the basis of *disability* and *family status*, unlawful discrimination in federally funded programs (Section 8 Housing Choice Voucher ("HCV") Program) as prohibited by **Title VIII of the FHA of 1968 et. seq., the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973** and for violations of Plaintiff's **Bill of Rights** as guaranteed by the **U.S.C. 5th and 14th Amendments** for **Fair Due Process of Law** and **Equal Protection of the law**. And for Defendant's violations of the **Ohio Constitution's Bill of Rights Article 1 Sections 1, 5, and 10** and **Chapter 4112.055 of Ohio Revised Code** ('O.R.C.").

Plaintiff is seeking *immediate* mandatory Injunctive Relief and damages (monetary and non-monetary relief, including actual damages, punitive damages, court cost, legal fees, emotional distress and mental anguish in the amount of **$7,000,000.00.**

Plaintiff demands a JURY trial.

Part III.
Facts of the Instant Case

1.      Plaintiff is a New Yorker and an American not "Black" nor "African" of any sorts. Plaintiff has been a participant of the Section 8 Housing Choice Voucher ("HCV") Program since approximately 1996 and is documented with HUD as a person with a disability. Plaintiff's two

2

minor and disabled children are also other persons under the meaning of the Americans with Disabilities Act with disabilities and who were also contractually able to reside in Plaintiff's household per the HUD HAP Contract (see <u>PL. Ex. 1</u>).

2.      In March of 2020 due to a government induced fear and panic of COVID 19 and legal circumstances, specifically Ronald Parris, the father of my two minor children removed my two children from the state of NY and refused to return them. So due to these circumstances I requested a portability transfer to the state of Ohio and it was granted and Plaintiff moved, *temporarily*.

3.      In 2023, after completing my last recertification to the best of my knowledge and ability the PHA sent me a letter on 12/28/23 which does not allege that Plaintiff *did not initially* provide documents requested by the PHA on 12/28 or that Plaintiff's package may have been incomplete. The 12/28/23 letter is vague and ambiguous and unlawfully discriminative instead (see <u>PL. Ex. 2</u>).

4.      I complained to the PHAs for clarity.

5.      The PHAs then sent the plaintiff a second letter dated 1/23/24 which then specifically quoted **"24 CFR 982.551 (c)(2)"** to defend what I felt was *unlawful housing discrimination on the basis of family status*. But Plaintiff found that there is no *"24 CFR 982.551 (c)(2)"* in the Code of Federal Regulations. The PHAs' second letter also quotes **"24 CFR 982.552 (c)(1)(i)"**, "(c) Authority to deny admission or terminate assistance. (1) Grounds for denial or termination of assistance.  The PHA may at any time …terminate program assistance for a participant, for any of the following grounds: (i) If the family violates any family obligations under the program (see § 982.551). Additionally, "24 CFR 982.552 (c)(1)(i)" of the CFR quotes **"§982.553"** concerning denial or termination of assistance for ***"crime by family members."*** Plaintiff was even more perplexed and confused by the 1/23/24 letter than the first as the second letter seems

to have added an accusation for "crimes" against either the plaintiff or plaintiff's children that was not included in the 12/28/23 letter (see <u>PL. Ex. 2</u>).

6.     The second letter also demanded that Plaintiff physically come into the PHA's office and stated how I could obtain a "reasonable accommodation" for persons with disability but Plaintiff was unable to reach anyone from the PHA's office about a "reasonable accommodation", at all and so Plaintiff was also discriminated against on the basis of my *disability.*

7.     The PHAs' 3/27/24 letter then promises to terminate Plaintiff's participation in the federally funded Section 8 HCV Program quoting, "**24 CFR 982.551** Obligations of Participant; **24 CFR 982.552** Termination of Assistance" by 4/30/24 and states ***"Specifically, you have failed to provide all of the required information that was requested on multiple occasions"*** and did so ***without any due process of law.***

8.     The PHAs' letters are actually **false**. Plaintiff did NOT ***"fail to provide all the required information"***. Plaintiff provided the "... banking statement" requested and always denied never initially providing that document which was the ONLY **clear** request made in the PHA's three ambiguous letters. And the 3/27/24 letter terminating my assistance ***does not mention its initial confusing demands regarding my minor children being part of their demands.*** So Plaintiff believes that initial demand could not lawfully be restated or rephrased and no documents could have been provided for an unlawful request and so was completely left out of the PHA's 3/27/24 letter threatening to terminate my housing because it was unlawfully discriminative.

9.     The final decision also does not take into account Plaintiff's disability or the disability of my children, Plaintiff's calls and emails to the PHA asking for clarity prior to and on 1/27/24, Plaintiff's 3/15/24 emails requesting to speak to a supervisor for clarity and for a reasonable accommodation to traveling back and forth to the PHA's office as demanded in the second letter. The PHAs did not take into account Plaintiff's 3/21/24 mailing via USPS which included my Complaint to the PHA which was never responded to prior to terminating my housing assistance.

4

The PHAs' actions does not take into account that on 4/2/24 Plaintiff also informed the PHAs' "Housing Specialist" that the new landlord *and frankly those who were Defendant HUD's participants*, wouldn't comply with the PHA's 12/28/23 demands and request either to provide Plaintiff with "a letter" or "an updated lease without my children". *Moreover, Plaintiff had no landlord in this equation until 3/18/24* as the property was in the process of being sold/transferred over to new owners and the PHA knew this while the Plaintiff *did not* .

10.    Pursuant to the **code of federal regulations, Section 982.552,** "PHA denial or termination of assistance for family" there must be **"(a)** *Action or inaction by family"*. And Plaintiff denies committing any inactions or actions that would terminate my participation in the Section 8 HCV program and **rights to fair due process of the law**. Plaintiff took ALL the action Plaintiff could possibly take and for which I felt was reasonable. The PHAs' and frankly HUD's inactions includes no due process of law prior to terminating my federal benefits in violation to the **5th and 14th Amendments guaranteed under the United States Constitution** and while Plaintiff was complaining of unlawful housing discrimination based upon *family status* and *disability*.

11.    The PHAs' terminated Plaintiff participation in the HCV Program on 4/30/24 as promised and in violation to federal and Ohio state laws as mentioned in the *"Opening"* of this Complaint.  The PHA willfully refused to make clear its demands **prior to 4/30/24** without continuing to violate other federal laws like *actually providing a reasonable accommodation* after changing my recertification process to a "mandatory" walk-in interview that others without a disability did not face; in effect targeting my disability now to make recertification just that much more impossible to complete.

12.    On or about **9/24/24**, (and not before the termination) after losing my home and more than likely in response to my many complaints with the PHA, President Justin Davis of Columbus Metropolitan Housing Authority called Plaintiff and also emailed Plaintiff a copy of

the document in question showing Plaintiff mistakenly failed to complete the Family Composition portion of my package. Meaning, I did not list my children **OR MYSELF** on that document. But the PHAs housing special's demands STILL only *focused on and targeted Plaintiff's minor children* (by name) and said nothing about the Plaintiff and instead of being <u>clear</u> as to what the PHA may have been requesting made unlawful discriminatory demands of the Plaintiff that were unlawfully discriminating against a households with minor children and then on the basis of disabilities. Justin Davis refused to reinstate my housing voucher in retaliation for complaints I filed against the PHAs.

13.     Additionally, during the same time HUD's new participant, Heel Home Ltd., who purchased the home I was renting in the Section 8 HCV Program also began unlawfully discriminating against my family and I also on the basis of *disability* due to the emotional support animal I adopted for my family and I had **no way** in which to deal with *that* unlawful discrimination with *HUD or the PHAs* , (*HUD'S participant's frankly)* which was occurring at the exact same time (See 2:24-cv-02051 U.S.D.C. Southern District, Ohio)[1].

Part IV.
Causes of Action

14.     Defendants HUD and its agents are in violation of **Title 18 U.S.C. §§ 241** and **242** which prohibit *conspiracies* against the Bill of Rights guaranteed by the **United States Constitution, 5th (and 14th) Amendments** and could be liable under *Biven*.

15.     Defendant HUD and its agents violated **Title VIII of the FHA of 1968 et. seq.**

16.     Defendant HUD  and its agents violated the **Civil  Rights Act of 1964 et. seq.**

17.     Defendant HUD and its agents violated **Section 504 the Rehabilitation Act of 1973 et. seq.** (Section 504 of the Rehabilitation Act of 1973 prohibits discrimination based on disability

---

[1] This matter was dismissed by both the USDC and the 6th Circuit for Plaintiff's inability to pay court cost and is on the was to SCOTUS.

in programs or activities that receive federal financial assistance or are conducted by federal agencies, ensuring equal access and opportunity for individuals with disabilities).

21.    Defendant HUD and its agents violated Ohio state laws specifically, **Chapter 4112.055 of the Ohio Revised Code** which prohibits unlawful housing discrimination based on family status and disability.

20.    Defendant HUD and its agents violated Plaintiff's guaranteed rights under the **Ohio Constitution Article 1 Section 1** *"All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."*

21.    Defendant HUD and its agents violated Plaintiff's guaranteed rights under the **Ohio Constitution Article 1 Section 5** *"The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury".*

22.    Defendant HUD and its agents violated Plaintiff's guaranteed rights under the **Ohio Constitution**, Article 1 Section 10 ***Trial for Crimes.***

Part V.
Mandatory and Immediate Injunctive Relief

23.    Under **Title VIII of the FHA of 1968 et. seq.** Plaintiff is entitled to temporary and or permanent injunctive relief to stop the irreparable harm occurring to Plaintiff as a result of Defendants unlawful housing discrimination and bill of rights violations against the Plaintiff (and Plaintiff's family) which includes the theft and death of Plaintiff emotional support taken by HUD's participant (Heels Home, Ltd.) while they were discriminating against the Plaintiff on the basis of Plaintiff's disability.

24.    In considering Mandatory Injunction or Preliminary Injunctive Relief, the Courts considers **irreparable harm** if the injunction is not granted. Plaintiff is currently HOMELESS, and again Plaintiff has already suffered from the theft and presumed DEATH of my ESA (emotional support animal) on the date of my wrongful eviction which occurred simultaneously to Defendant's actions. Plaintiff has already lost EVERYTHING including medical supplics like my glasses and am walking around half blind and Plaintiff remains estranged and separated from my children in my homelessness. Plaintiff has also almost been killed in Hurricane Helen during my homelessness. And Plaintiff stays inundated with offers of being trafficked. WITHOUT MANDATORY INJUNCTIVE RELIEF PLAINTIFF REMAINS EXPOSED TO DANGER even DEATH.

25.    No one would be harmed by Plaintiff request for this Court to ORDER Defendant HUD to stop unlawfully discriminating against the PL; to provide a lawful manner of due process of laws to the Plaintiff and to restore Plaintiff participation and voucher in the HCV Program until such time as this court could make a determination on its allegations against the Plaintiff and Plaintiff accusations against HUD.

Part VI.
Wherefore

26.    Plaintiff seeks an immediate Mandatory Injunction Order of the **U.S. District Court** ORDERING DEFENDANT HUD (1) to stop unlawfully discriminating against the PL. (2) to provide a lawful manner for due process of laws to the Plaintiff for their accusations against the plaintiff (i.e. a Court of Law) (3) to immediately restore to the Plaintiff her housing voucher and participation in the HCV Program until such time as this court could make a determination on Plaintiff accusations against HUD.

27.    Plaintiff is seeking actual, compensatory, and punitive damages, damages for emotional distress, embarrassment, mental anguish, harassment, retaliation in the amount of **$7,000,000.00.**

Respectfully Submitted,

6.5.25

Ms. Tasha Chapman
TashaChapman100@gmail.com, 614-508-4547 and 347-740-6702

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 Pearl Street
New York, N.Y. 10007

Case No. _____

Tasha Chapman
       Pro Se Plaintiff,
         v.
U.S. Department of Housing and Urban Development  ("HUD"), et. al.,
451 7th Street
S.W., Washington, DC 20410
Telephone: (800) 927-9275

# PLAINTIFF EX. 1

| HOUSING ASSISTANCE PAYMENTS CONTRACT | COLUMBUS METROPOLITAN HOUSING AUTHORITY |
|---|---|
| (HAP) Contract - Voucher | Section 8 Department |
| Section 8 Housing Choice Voucher Program | 880 East 11th Avenue |
| Voucher Fund | Columbus, Ohio 43211 |

**Part A of the HAP Contract:  Contract**

**1.  Contents of Contract**

This HAP contract has three parts:
Part A:  Contract Information
Part B:  Body of Contract
Part C:  Tenancy Addendum

**2.  Tenant #  297859**

Chapman, Tasha

**3.  Contract Unit -  423530**

1539 Republic Av
Columbus, OH 43211-1509

**4.  Household**

The following persons may reside in the unit.  Other persons may not be added to the household without prior written approval of the owner and Columbus Metropolitan Housing Authority.

Chapman, Tasha
Parris, Ameer
Parris, Daoud

**5.  Initial Lease Term**

The initial lease term begins on  03/06/2021          *RH*
The initial lease term  ends  on  02/28/2022          RH

**6.  Initial Rent to Owner**

The initial rent to owner is  $1,050 .  During the initial lease term, the owner may not raise the rent to owner.  The household's share of the rent is    $392 .

**7.  Initial Housing Assistance**

The HAP contract term commences on the first day of the initial lease term.  At the beginning of the HAP contract term, the amount of the housing assistance payment by the PHA to the owner is    $658 per month.

The amount of the monthly housing assistance payment by the PHA to the owner is subject to change during the HAP contract term in accordance with HUD regulations.

form HUD-52641 (10/99)
ref Handbook 7420.8

## 8.  Utilities and Appliances

The Owner shall provide or pay for the utilities and appliances indicated below by an "O".  The tenant shall provide or pay for the utilities and appliances indicated below by a "T".  Unless otherwise specified below, the owner shall pay for all utilities and appliances provided by the owner.

| Item | Type | | Provided by | Paid by |
|---|---|---|---|---|
| Heating | [x] | Natural Gas | | [T] |
| | | Propane Gas | | |
| | | Oil or Electric | | |
| | | Coal or Other | | |
| Cooking | [x] | Natural Gas | | [T] |
| | | Propane Gas | | |
| | | Oil or Electric | | |
| | | Coal or Other | | |
| Other Electric | | | | [T] |
| Air Conditioning | | | | [O] |
| Water Heating | [x] | Natural Gas | | [T] |
| | | Propane Gas | | |
| | | Oil or Electric | | |
| | | Coal or Other | | |
| Water | | | | [T] |
| Sewer | | | | [T] |
| Trash | | | | [O] |
| Refrigerator | | | | [O] |
| Range/Stove | | | | [O] |
| Microwave | | | | [Unkown] |
| Other: | | | | |

## Signatures

**Public Housing Agency**
Columbus Metropolitan Housing Authority
880 East Eleventh Avenue
Columbus, Ohio 43211

*Scott Ammarell*
Amy Heck (Mar 29, 2021 16:22 CDT)
Acting Vice President of Housing Choice Voucher Program

Authorized by (Initials): *Amy Heck (Mar 29, 2021 16:22 CDT)*

| 04/15/21 | Mar 29, 2021 |
|---|---|
| Check Date | Authorization Date |

**Owner    L193201**
R & A Properties of Ohio LLC
c/o Ryan Hale, 2328 Amhearst Lane
Flowermound, TX 75028

*Ryan Hale*
Ryan Hale (Mar 29, 2021 15:05 CDT)
Owner Signature

POA for R&A Properties of Ohio LLC
Name and Title of Signatory

| Mar 29, 2021 |
|---|
| Date |

Page 2 - Original Document #   363460  New Document #   363460     BR:  3     FMR: 1428     GR:    $1,268     form HUD-52641 (10/99)
ref Handbook 7420.8

**Ryan Hale (RH)**
E-signed 2021-03-29 03:05PM CDT
ryan@rapropertiesofohio.com

**Housing Assistance Payments Contract (HAP Contract) Section 8 Tenant-Based Assistance Housing Choice Voucher Program**

**U.S. Department of Housing and Urban Development**
Office of Public and Indian Housing

## Part B of HAP Contract: Body of Contract

### 1. Purpose

a. This is a HAP contract between the PHA and the owner. The HAP contract is entered to provide assistance for the family under the Section 8 voucher program (see HUD program regulations at 24 Code of Federal Regulations Part 982).

b. The HAP contract only applies to the household and contract unit specified in Part A of the HAP contract.

c. During the HAP contract term, the PHA will pay housing assistance payments to the owner in accordance with the HAP contract.

d. The family will reside in the contract unit with assistance under the Section 8 voucher program. The housing assistance payments by the PHA assist the tenant to lease the contract unit from the owner for occupancy by the family.

### 2. Lease of Contract Unit

a. The owner has leased the contract unit to the tenant for occupancy by the family with assistance under the Section 8 voucher program.

b. The PHA has approved leasing of the unit in accordance with requirements of the Section 8 voucher program.

c. The lease for the contract unit must include word-for-word all provisions of the tenancy addendum required by HUD (Part C of the HAP contract).

d. The owner certifies that:
   (1) The owner and the tenant have entered into a lease of the contract unit that includes all provisions of the tenancy addendum.
   (2) The lease is in a standard form that is used in the locality by the owner and that is generally used for other unassisted tenants in the premises.
   (3) The lease is consistent with State and local law.

e. The owner is responsible for screening the family's behavior or suitability for tenancy. The PHA is not responsible for such screening. The PHA has no liability or responsibility to the owner or other persons for the family's behavior or the family's conduct in tenancy.

### 3. Maintenance, Utilities, and Other Services

a. The owner must maintain the contract unit and premises in accordance with the housing quality standards (HQS).

b. The owner must provide all utilities needed to comply with the HQS.

c. If the owner does not maintain the contract unit in accordance with the HQS, or fails to provide all utilities needed to comply with the HQS, the PHA may exercise any available remedies. PHA remedies for such breach include recovery of overpayments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract. The PHA may not exercise such remedies against the owner because of an HQS breach for which the family is responsible, and that is not caused by the owner.

d. The PHA shall not make any housing assistance payments if the contract unit does not meet the HQS, unless the owner corrects the defect within the period specified by the PHA and the PHA verifies the correction. If a defect is life threatening, the owner must correct the defect within no more than 24 hours. For other defects, the owner must correct the defect within the period specified by the PHA.

e. The PHA may inspect the contract unit and premises at such times as the PHA determines necessary, to ensure that the unit is in accordance with the HQS.

f. The PHA must notify the owner of any HQS defects shown by the inspection.

g. The owner must provide all housing services as agreed to in the lease.

### 4. Term of HAP Contract

a. **Relation to lease term.** The term of the HAP contract begins on the first day of the initial term of the lease, and terminates on the last day of the term of the lease (including the initial lease term and any extensions).

b. When HAP contract terminates.
   (1) The HAP contract terminates automatically if the lease is terminated by the owner or the tenant.
   (2) The PHA may terminate program assistance for the family for any grounds authorized in accordance with HUD requirements. If the PHA terminates program assistance for the family, the HAP contract terminates automatically.
   (3) If the family moves from the contract unit, the HAP contract terminates automatically.
   (4) The HAP contract terminates automatically 180 calendar days after the last housing assistance payment to the owner.
   (5) The PHA may terminate the HAP contract if the PHA determines, in accordance with HUD requirements, that available program funding is not sufficient to support continued assistance for families in the program.
   (6) The HAP contract terminates automatically upon the death of a single member household, including single member households with a live-in aide.

(7) The PHA may terminate the HAP contract if the PHA determines that the contract unit does not provide adequate space in accordance with the HQS because of an increase in family size or a change in family composition.

(8) If the family breaks up, the PHA may terminate the HAP contract, or may continue housing assistance payments on behalf of family members who remain in the contract unit.

(9) The PHA may terminate the HAP contract if the PHA determines that the unit does not meet all requirements of the HQS, or determines that the owner has otherwise breached the HAP contract.

## 5. Provision and Payment for Utilities and Appliances

a. The lease must specify what utilities are to be provided or paid by the owner or the tenant.

b. The lease must specify what appliances are to be provided or paid by the owner or the tenant.

c. Part A of the HAP contract specifies what utilities and appliances are to be provided or paid by the owner or the tenant. The lease shall be consistent with the HAP contract.

## 6. Rent to Owner: Reasonable Rent

a During the HAP contract term, the rent to owner may at no time exceed the reasonable rent for the contract unit as most recently determined or redetermined by the PHA in accordance with HUD requirements.

b. The PHA must determine whether the rent to owner is reasonable in comparison to rent for other comparable unassisted units. To make this determination, the PHA must consider:

(1) The location, quality, size, unit type, and age of the contract unit; and

(2) Any amenities, housing services, maintenance and utilities provided and paid by the owner.

c. The PHA must redetermine the reasonable rent when required in accordance with HUD requirements. The PHA may redetermine the reasonable rent at any time.

d. During the HAP contract term, the rent to owner may not exceed rent charged by the owner for comparable unassisted units in the premises. The owner must give the PHA any information requested by the PHA on rents charged by the owner for other units in the premises or elsewhere.

## 7. PHA Payment to Owner

a. When paid

(1) During the term of the HAP contract, the PHA must make monthly housing assistance payments to the owner on behalf of the family at the beginning of each month.

(2) The PHA must pay housing assistance payments promptly when due to the owner.

(3) If housing assistance payments are not paid promptly when due after the first two calendar months of the HAP contract term, the PHA shall pay the owner penalties if all of the following circumstances apply: (i) Such penalties are in accordance with generally accepted practices and law, as applicable in the local housing market, governing penalties for late payment of rent by a

tenant; (ii) It is the owner's practice to charge such penalties for assisted and unassisted tenants; and (iii) The owner also charges such penalties against the tenant for late payment of family rent to owner. However, the PHA shall not be obligated to pay any late payment penalty if HUD determines that late payment by the PHA is due to factors beyond the PHA's control. Moreover, the PHA shall not be obligated to pay any late payment penalty if housing assistance payments by the PHA are delayed or denied as a remedy for owner breach of the HAP contract (including any of the following PHA remedies: recovery of overpayments, suspension of housing assistance payments, abatement or reduction of housing assistance payments, termination of housing assistance payments and termination of the contract).

(4) Housing assistance payments shall only be paid to the owner while the family is residing in the contract unit during the term of the HAP contract. The PHA shall not pay a housing assistance payment to the owner for any month after the month when the family moves out.

b. **Owner compliance with HAP contract**. Unless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract.

c. **Amount of PHA payment to owner**

(1) The amount of the monthly PHA housing assistance payment to the owner shall be determined by the PHA in accordance with HUD requirements for a tenancy under the voucher program.

(2) The amount of the PHA housing assistance payment is subject to change during the HAP contract term in accordance with HUD requirements. The PHA must notify the family and the owner of any changes in the amount of the housing assistance payment.

(3) The housing assistance payment for the first month of the HAP contract term shall be prorated for a partial month.

d. **Application of payment**. The monthly housing assistance payment shall be credited against the monthly rent to owner for the contract unit.

e. **Limit of PHA responsibility**

(1) The PHA is only responsible for making housing assistance payments to the owner in accordance with the HAP contract and HUD requirements for a tenancy under the voucher program.

(2) The PHA shall not pay any portion of the rent to owner in excess of the housing assistance payment. The PHA shall not pay any other claim by the owner against the family.

f. **Overpayment to owner**. If the PHA determines that the owner is not entitled to the housing assistance payment or any part of it, the PHA, in addition to other remedies, may deduct the amount of the overpayment from any amounts due the owner (including amounts due under any other Section 8 assistance contract).

## 8. Owner Certification

form HUD-52641 (8/2009)
ref Handbook 7420.8

During the term of this contract, the owner certifies that:

 a. The owner is maintaining the contract unit and premises in accordance with the HQS.

 b. The contract unit is leased to the tenant. The lease includes the tenancy addendum (Part C of the HAP contract), and is in accordance with the HAP contract and program requirements. The owner has provided the lease to the PHA, including any revisions of the lease.

 c. The rent to owner does not exceed rents charged by the owner for rental of comparable unassisted units in the premises.

 d. Except for the rent to owner, the owner has not received and will not receive any payments or other consideration (from the family, the PHA, HUD, or any other public or private source) for rental of the contract unit during the HAP contract term.

 e. The family does not own or have any interest in the contract unit.

 f. To the best of the owner's knowledge, the members of the family reside in the contract unit, and the unit is the family's only residence.

 g. The owner (including a principal or other interested party) is not the parent, child, grandparent, grandchild, sister, or brother of any member of the family, unless the PHA has determined (and has notified the owner and the family of such determination) that approving rental of the unit, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.

## 9. Prohibition of Discrimination.

In accordance with applicable equal opportunity statutes, Executive Orders, and regulations:

 a. The owner must not discriminate against any person because of race, color, religion, sex, national origin, age, familial status, or disability in connection with the HAP contract.

 b. The owner must cooperate with the PHA and HUD in conducting equal opportunity compliance reviews and complaint investigations in connection with the HAP contract.

## 10. Owner's Breach of HAP Contract

 a Any of the following actions by the owner (including a principal or other interested party) is a breach of the HAP contract by the owner:

  (1) If the owner has violated any obligation under the HAP contract, including the owner's obligation to maintain the unit in accordance with the HQS.

  (2) If the owner has violated any obligation under any other housing assistance payments contract under Section 8.

  (3) If the owner has committed fraud, bribery or any other corrupt or criminal act in connection with any Federal housing assistance program.

  (4) For projects with mortgages insured by HUD or loans made by HUD, if the owner has failed to comply with the regulations for the applicable mortgage insurance or loan program, with the mortgage or mortgage note, or with the regulatory agreement; or if there has committed fraud, bribery or any other corrupt or criminal act in connection with the mortgage or loan.

  (5) If the owner has engaged in any drug-related criminal activity or any violent criminal activity.

 b. If the PHA determines that a breach has occurred, the PHA may exercise any of its rights and remedies under the HAP contract, or any other available rights and remedies for such breach. The PHA shall notify the owner of such determination, including a brief statement of the reasons for the determination. The notice by the PHA to the owner may require the owner to take corrective action, as verified or determined by the PHA, by a deadline prescribed in the notice.

 c. The PHA's rights and remedies for owner breach of the HAP contract include recovery of overpayments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract.

 d. The PHA may seek and obtain additional relief by judicial order or action, including specific performance, other injunctive relief or order for damages.

 e. Even if the family continues to live in the contract unit, the PHA may exercise any rights and remedies for owner breach of the HAP contract.

 f. The PHA's exercise or non-exercise of any right or remedy for owner breach of the HAP contract is not a waiver of the right to exercise that or any other right or remedy at any time.

## 11. PHA and HUD Access to Premises and Owner's Records

 a. The owner must provide any information pertinent to the HAP contract that the PHA or HUD may reasonably require.

 b. The PHA, HUD and the Comptroller General of the United States shall have full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract, including the right to examine or audit the records and to make copies.

 c. The owner must grant such access to computerized or other electronic records, and to any computers, equipment or facilities containing such records, and must provide any information or assistance needed to access the records.

## 12. Exclusion of Third Party Rights

 a. The family is not a party to or third party beneficiary of Part B of the HAP contract. The family may not enforce any provision of Part B, and may not exercise any right or remedy against the owner or PHA under Part B.

 b. The tenant or the PHA may enforce the tenancy addendum (Part C of the HAP contract) against the owner, and may exercise any right or remedy against the owner under the tenancy addendum.

 c. The PHA does not assume any responsibility for injury to, or any liability to, any person injured as a result of the owner's action or failure to act in connection with management of the contract unit or the premises or with implementation of the HAP contract, or as a result of any other action or failure to act by the owner.

 d. The owner is not the agent of the PHA, and the HAP contract does not create or affect any relationship between the PHA and any lender to the owner or any suppliers, employees, contractors or subcontractors used by the owner in connection with management of

form **HUD-52641** (8/2009)
ref Handbook 7420.8

the contract unit or the premises or with implementation of the HAP contract.

## 13. Conflict of Interest

a. "Covered individual" means a person or entity who is a member of any of the following classes:

(1) Any present or former member or officer of the PHA (except a PHA commissioner who is a participant in the program);

(2) Any employee of the PHA, or any contractor, sub-contractor or agent of the PHA, who formulates policy or who influences decisions with respect to the program;

(3) Any public official, member of a governing body, or State or local legislator, who exercises functions or responsibilities with respect to the program; or

(4) Any member of the Congress of the United States.

b. A covered individual may not have any direct or indirect interest in the HAP contract or in any benefits or payments under the contract (including the interest of an immediate family member of such covered individual) while such person is a covered individual or during one year thereafter.

c. "Immediate family member" means the spouse, parent (including a stepparent), child (including a stepchild), grandparent, grandchild, sister or brother (including a stepsister or stepbrother) of any covered individual.

d. The owner certifies and is responsible for assuring that no person or entity has or will have a prohibited interest, at execution of the HAP contract, or at any time during the HAP contract term.

e. If a prohibited interest occurs, the owner shall promptly and fully disclose such interest to the PHA and HUD.

f. The conflict of interest prohibition under this section may be waived by the HUD field office for good cause.

g. No member of or delegate to the Congress of the United States or resident commissioner shall be admitted to any share or part of the HAP contract or to any benefits which may arise from it.

## 14. Assignment of the HAP Contract

a. The owner may not assign the HAP contract to a new owner without the prior written consent of the PHA.

b. If the owner requests PHA consent to assign the HAP contract to a new owner, the owner shall supply any information as required by the PHA pertinent to the proposed assignment.

c. The HAP contract may not be assigned to a new owner that is debarred, suspended or subject to a limited denial of participation under HUD regulations (see 24 Code of Federal Regulations Part 24).

d. The HAP contract may not be assigned to a new owner if HUD has prohibited such assignment because:

(1) The Federal government has instituted an administrative or judicial action against the owner or proposed new owner for violation of the Fair Housing Act or other Federal equal opportunity requirements, and such action is pending; or

(2) A court or administrative agency has determined that the owner or proposed new owner violated

the Fair Housing Act or other Federal equal opportunity requirements.

e. The HAP contract may not be assigned to a new owner if the new owner (including a principal or other interested party) is the parent, child, grandparent, grandchild, sister or brother of any member of the family, unless the PHA has determined (and has notified the family of such determination) that approving the assignment, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.

f. The PHA may deny approval to assign the HAP contract if the owner or proposed new owner (including a principal or other interested party):

(1) Has violated obligations under a housing assistance payments contract under Section 8;

(2) Has committed fraud, bribery or any other corrupt or criminal act in connection with any Federal housing program;

(3) Has engaged in any drug-related criminal activity or any violent criminal activity;

(4) Has a history or practice of non-compliance with the HQS for units leased under the Section 8 tenant-based programs, or non-compliance with applicable housing standards for units leased with project-based Section 8 assistance or for units leased under any other Federal housing program;

(5) Has a history or practice of failing to terminate tenancy of tenants assisted under any Federally assisted housing program for activity engaged in by the tenant, any member of the household, a guest or another person under the control of any member of the household that:

(a) Threatens the right to peaceful enjoyment of the premises by other residents;

(b) Threatens the health or safety of other residents, of employees of the PHA, or of owner employees or other persons engaged in management of the housing;

(c) Threatens the health or safety of, or the right to peaceful enjoyment of their residents by, persons residing in the immediate vicinity of the premises; or

(d) Is drug-related criminal activity or violent criminal activity;

(6) Has a history or practice of renting units that fail to meet State or local housing codes; or

(7) Has not paid State or local real estate taxes, fines or assessments.

g. The new owner must agree to be bound by and comply with the HAP contract. The agreement must be in writing, and in a form acceptable to the PHA. The new owner must give the PHA a copy of the executed agreement.

## 15. Foreclosure.
In the case of any foreclosure, the immediate successor in interest in the property pursuant to the foreclosure shall assume such interest subject to the lease between the prior owner and the tenant and to the HAP contract between the prior owner and the PHA for the occupied unit. This provision does not affect any State or local law that provides longer time periods or other additional protections for tenants. **This provision will sunset on December 31, 2012 unless extended by law.**

16.    **Written Notices**. Any notice by the PHA or the owner in connection with this contract must be in writing.

17.    **Entire Agreement: Interpretation**
    a. The HAP contract contains the entire agreement between the owner and the PHA.
    b    The HAP contract shall be interpreted and implemented in accordance with all statutory requirements, and with all HUD requirements, including the HUD program regulations at 24 Code of Federal Regulations Part 982.

**Housing Assistance Payments Contract** U.S. Department of Housing
**(HAP Contract)** and Urban Development
**Section 8 Tenant-Based Assistance** Office of Public and Indian Housing
**Housing Choice Voucher Program**

## Part C of HAP Contract: Tenancy Addendum

### 1. Section 8 Voucher Program

   a.   The owner is leasing the contract unit to the tenant for occupancy by the tenant's family with assistance for a tenancy under the Section 8 housing choice voucher program (voucher program) of the United States Department of Housing and Urban Development (HUD).

   b.   The owner has entered into a Housing Assistance Payments Contract (HAP contract) with the PHA under the voucher program. Under the HAP contract, the PHA will make housing assistance payments to the owner to assist the tenant in leasing the unit from the owner.

### 2. Lease

   a.   The owner has given the PHA a copy of the lease, including any revisions agreed by the owner and the tenant. The owner certifies that the terms of the lease are in accordance with all provisions of the HAP contract and that the lease includes the tenancy addendum.

   b.   The tenant shall have the right to enforce the tenancy addendum against the owner. If there is any conflict between the tenancy addendum and any other provisions of the lease, the language of the tenancy addendum shall control.

### 3. Use of Contract Unit

   a.   During the lease term, the family will reside in the contract unit with assistance under the voucher program.

   b.   The composition of the household must be approved by the PHA. The family must promptly inform the PHA of the birth, adoption or court-awarded custody of a child. Other persons may not be added to the household without prior written approval of the owner and the PHA.

   c.   The contract unit may only be used for residence by the PHA-approved household members. The unit must be the family's only residence. Members of the household may engage in legal profit making activities incidental to primary use of the unit for residence by members of the family.

   d.   The tenant may not sublease or let the unit.

   e.   The tenant may not assign the lease or transfer the unit.

### 4. Rent to Owner

   a.   The initial rent to owner may not exceed the amount approved by the PHA in accordance with HUD requirements.

   b.   Changes in the rent to owner shall be determined by the provisions of the lease. However, the owner may not raise the rent during the initial term of the lease.

   c.   During the term of the lease (including the initial term of the lease and any extension term), the rent to owner may at no time exceed:

     (1)   The reasonable rent for the unit as most recently determined or redetermined by the PHA in accordance with HUD requirements, or

     (2)   Rent charged by the owner for comparable unassisted units in the premises.

### 5. Family Payment to Owner

   a.   The family is responsible for paying the owner any portion of the rent to owner that is not covered by the PHA housing assistance payment.

   b.   Each month, the PHA will make a housing assistance payment to the owner on behalf of the family in accordance with the HAP contract. The amount of the monthly housing assistance payment will be determined by the PHA in accordance with HUD requirements for a tenancy under the Section 8 voucher program.

   c.   The monthly housing assistance payment shall be credited against the monthly rent to owner for the contract unit.

   d.   The tenant is not responsible for paying the portion of rent to owner covered by the PHA housing assistance payment under the HAP contract between the owner and the PHA. A PHA failure to pay the housing assistance payment to the owner is not a violation of the lease. The owner may not terminate the tenancy for nonpayment of the PHA housing assistance payment.

   e.   The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner. Rent to owner includes all housing services, maintenance, utilities and appliances to be provided and paid by the owner in accordance with the lease.

   f.   The owner must immediately return any excess rent payment to the tenant.

### 6. Other Fees and Charges

   a.   Rent to owner does not include cost of any meals or supportive services or furniture which may be provided by the owner.

   b.   The owner may not require the tenant or family members to pay charges for any meals or supportive services or furniture which may be provided by the owner. Nonpayment of any such charges is not grounds for termination of tenancy.

   c.   The owner may not charge the tenant extra amounts for items customarily included in rent to owner in the locality, or provided at no additional cost to unsubsidized tenants in the premises.

### 7. Maintenance, Utilities, and Other Services

   a   **Maintenance**

(1) The owner must maintain the unit and premises in accordance with the HQS.

(2) Maintenance and replacement (including redecoration) must be in accordance with the standard practice for the building concerned as established by the owner.

b   **Utilities and appliances**

   (1) The owner must provide all utilities needed to comply with the HQS.

   (2) The owner is not responsible for a breach of the HQS caused by the tenant's failure to:

   (a) Pay for any utilities that are to be paid by the tenant.

   (b) Provide and maintain any appliances that are to be provided by the tenant.

c. **Family damage.** The owner is not responsible for a breach of the HQS because of damages beyond normal wear and tear caused by any member of the household or by a guest.

d   **Housing services.** The owner must provide all housing services as agreed to in the lease.

## 8. Termination of Tenancy by Owner

a. **Requirements.** The owner may only terminate the tenancy in accordance with the lease and HUD requirements.

b   **Grounds.** During the term of the lease (the initial term of the lease or any extension term), the owner may only terminate the tenancy because of:

   (1) Serious or repeated violation of the lease;

   (2) Violation of Federal, State, or local law that imposes obligations on the tenant in connection with the occupancy or use of the unit and the premises;

   (3) Criminal activity or alcohol abuse (as provided in paragraph c); or

   (4) Other good cause (as provided in paragraph d).

c   **Criminal activity or alcohol abuse.**

   (1) The owner may terminate the tenancy during the term of the lease if any member of the household, a guest or another person under a resident's control commits any of the following types of criminal activity:

   (a) Any criminal activity that threatens the health or safety of, or the right to peaceful enjoyment of the premises by, other residents (including property management staff residing on the premises);

   (b) Any criminal activity that threatens the health or safety of, or the right to peaceful enjoyment of their residences by, persons residing in the immediate vicinity of the premises;

   (c) Any violent criminal activity on or near the premises; or

   (d) Any drug-related criminal activity on or near the premises.

(2) The owner may terminate the tenancy during the term of the lease if any member of the household is:

   (a) Fleeing to avoid prosecution, or custody or confinement after conviction, for a crime, or attempt to commit a crime, that is a felony under the laws of the place from which the individual flees; or that, in the case of the State of New Jersey, is a high misdemeanor; or

   (b) Violating a condition of probation or parole under Federal or State law.

(3) The owner may terminate the tenancy for criminal activity by a household member in accordance with this section if the owner determines that the household member has committed the criminal activity, regardless of whether the household member has been arrested or convicted for such activity.

(4) The owner may terminate the tenancy during the term of the lease if any member of the household has engaged in abuse of alcohol that threatens the health, safety or right to peaceful enjoyment of the premises by other residents.

d   **Other good cause for termination of tenancy**

(1) During the initial lease term, other good cause for termination of tenancy must be something the family did or failed to do.

(2) During the initial lease term or during any extension term, other good cause may include:

   (a) Disturbance of neighbors,

   (b) Destruction of property, or

   (c) Living or housekeeping habits that cause damage to the unit or premises.

(3) After the initial lease term, such good cause may include:

   (a) The tenant's failure to accept the owner's offer of a new lease or revision;

   (b) The owner's desire to use the unit for personal or family use or for a purpose other than use as a residential rental unit; or

   (c) A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, the owner's desire to rent the unit for a higher rent).

(5) The examples of other good cause in this paragraph do not preempt any State or local laws to the contrary.

(6) In the case of an owner who is an immediate successor in interest pursuant to foreclosure during the term of the lease, requiring the tenant to vacate the property prior to sale shall not constitute other good cause, except that the owner may terminate the tenancy effective on the date of transfer of the unit to the owner if the owner: (a) will occupy the unit as a primary residence; and (b) has provided the tenant a notice to vacate at least 90 days before the effective date of such notice. This

provision shall not affect any State or local law that provides for longer time periods or addition protections for tenants. **This provision will sunset on December 31, 2012 unless extended by law.**

**e. Protections for Victims of Abuse.**

(1) An incident or incidents of actual or threatened domestic violence, dating violence, or stalking will not be construed as serious or repeated violations of the lease or other "good cause" for termination of the assistance, tenancy, or occupancy rights of such a victim.

(2) Criminal activity directly relating to abuse, engaged in by a member of a tenant's household or any guest or other person under the tenant's control, shall not be cause for termination of assistance, tenancy, or occupancy rights if the tenant or an immediate member of the tenant's family is the victim or threatened victim of domestic violence, dating violence, or stalking.

(3) Notwithstanding any restrictions on admission, occupancy, or terminations of occupancy or assistance, or any Federal, State or local law to the contrary, a PHA, owner or manager may "bifurcate" a lease, or otherwise remove a household member from a lease, without regard to whether a household member is a signatory to the lease, in order to evict, remove, terminate occupancy rights, or terminate assistance to any individual who is a tenant or lawful occupant and who engages in criminal acts of physical violence against family members or others. This action may be taken without evicting, removing, terminating assistance to, or otherwise penalizing the victim of the violence who is also a tenant or lawful occupant. Such eviction, removal, termination of occupancy rights, or termination of assistance shall be effected in accordance with the procedures prescribed by Federal, State, and local law for the termination of leases or assistance under the housing choice voucher program.

(4) Nothing in this section may be construed to limit the authority of a public housing agency, owner, or manager, when notified, to honor court orders addressing rights of access or control of the property, including civil protection orders issued to protect the victim and issued to address the distribution or possession of property among the household members in cases where a family breaks up.

(5) Nothing in this section limits any otherwise available authority of an owner or manager to evict or the public housing agency to terminate assistance to a tenant for any violation of a lease not premised on the act or acts of violence in question against the tenant or a member of the tenant's household, provided that the owner, manager, or public housing agency does not subject an individual who is or has been a victim of domestic violence, dating violence, or stalking to a

more demanding standard than other tenants in determining whether to evict or terminate.

(6) Nothing in this section may be construed to limit the authority of an owner or manager to evict, or the public housing agency to terminate assistance, to any tenant if the owner, manager, or public housing agency can demonstrate an actual and imminent threat to other tenants or those employed at or providing service to the property if the tenant is not evicted or terminated from assistance.

(7) Nothing in this section shall be construed to supersede any provision of any Federal, State, or local law that provides greater protection than this section for victims of domestic violence, dating violence, or stalking.

**f. Eviction by court action.** The owner may only evict the tenant by a court action.

**g. Owner notice of grounds**

(1) At or before the beginning of a court action to evict the tenant, the owner must give the tenant a notice that specifies the grounds for termination of tenancy. The notice may be included in or combined with any owner eviction notice.

(2) The owner must give the PHA a copy of any owner eviction notice at the same time the owner notifies the tenant.

(3) Eviction notice means a notice to vacate, or a complaint or other initial pleading used to begin an eviction action under State or local law.

**9. Lease: Relation to HAP Contract**

If the HAP contract terminates for any reason, the lease terminates automatically.

**10. PHA Termination of Assistance**

The PHA may terminate program assistance for the family for any grounds authorized in accordance with HUD requirements. If the PHA terminates program assistance for the family, the lease terminates automatically.

**11. Family Move Out**

The tenant must notify the PHA and the owner before the family moves out of the unit.

**12. Security Deposit**

a. The owner may collect a security deposit from the tenant. (However, the PHA may prohibit the owner from collecting a security deposit in excess of private market practice, or in excess of amounts charged by the owner to unassisted tenants. Any such PHA-required restriction must be specified in the HAP contract.)

b. When the family moves out of the contract unit, the owner, subject to State and local law, may use the security deposit, including any interest on the deposit, as reimbursement for any unpaid rent payable by the tenant, any damages to the unit or any other amounts that the tenant owes under the lease.

   c.   The owner must give the tenant a list of all items charged against the security deposit, and the amount of each item. After deducting the amount, if any, used to reimburse the owner, the owner must promptly refund the full amount of the unused balance to the tenant.

   d.   If the security deposit is not sufficient to cover amounts the tenant owes under the lease, the owner may collect the balance from the tenant.

## 13. Prohibition of Discrimination

In accordance with applicable equal opportunity statutes, Executive Orders, and regulations, the owner must not discriminate against any person because of race, color, religion, sex, national origin, age, familial status or disability in connection with the lease.

## 14. Conflict with Other Provisions of Lease

   a.   The terms of the tenancy addendum are prescribed by HUD in accordance with Federal law and regulation, as a condition for Federal assistance to the tenant and tenant's family under the Section 8 voucher program.

   b.   In case of any conflict between the provisions of the tenancy addendum as required by HUD, and any other provisions of the lease or any other agreement between the owner and the tenant, the requirements of the HUD-required tenancy addendum shall control.

## 15. Changes in Lease or Rent

   a.  The tenant and the owner may not make any change in the tenancy addendum. However, if the tenant and the owner agree to any other changes in the lease, such changes must be in writing, and the owner must immediately give the PHA a copy of such changes. The lease, including any changes, must be in accordance with the requirements of the tenancy addendum.

   b.  In the following cases, tenant-based assistance shall not be continued unless the PHA has approved a new tenancy in accordance with program requirements and has executed a new HAP contract with the owner:

      (1)  If there are any changes in lease requirements governing tenant or owner responsibilities for utilities or appliances;

      (2)  If there are any changes in lease provisions governing the term of the lease;

      (3)  If the family moves to a new unit, even if the unit is in the same building or complex.

   c. PHA approval of the tenancy, and execution of a new HAP contract, are not required for agreed changes in the lease other than as specified in paragraph b.

   d. The owner must notify the PHA of any changes in the amount of the rent to owner at least sixty days before any such changes go into effect, and the amount of the rent to owner following any such agreed change may not exceed the reasonable rent for the unit as most recently determined or redetermined by the PHA in accordance with HUD requirements.

## 16. Notices

Any notice under the lease by the tenant to the owner or by the owner to the tenant must be in writing.

## 17. Definitions

**Contract unit.** The housing unit rented by the tenant with assistance under the program.

**Family.** The persons who may reside in the unit with assistance under the program.

**HAP contract.** The housing assistance payments contract between the PHA and the owner. The PHA pays housing assistance payments to the owner in accordance with the HAP contract.

**Household.** The persons who may reside in the contract unit. The household consists of the family and any PHA-approved live-in aide. (A live-in aide is a person who resides in the unit to provide necessary supportive services for a member of the family who is a person with disabilities.)

**Housing quality standards (HQS).** The HUD minimum quality standards for housing assisted under the Section 8 tenant-based programs.

**HUD.** The U.S. Department of Housing and Urban Development.

**HUD requirements.** HUD requirements for the Section 8 program. HUD requirements are issued by HUD headquarters, as regulations, Federal Register notices or other binding program directives.

**Lease.** The written agreement between the owner and the tenant for the lease of the contract unit to the tenant. The lease includes the tenancy addendum prescribed by HUD.

**PHA.** Public Housing Agency.

**Premises.** The building or complex in which the contract unit is located, including common areas and grounds.

**Program.** The Section 8 housing choice voucher program.

**Rent to owner.** The total monthly rent payable to the owner for the contract unit. The rent to owner is the sum of the portion of rent payable by the tenant plus the PHA housing assistance payment to the owner.

**Section 8.** Section 8 of the United States Housing Act of 1937 (42 United States Code 1437f).

**Tenant.** The family member (or members) who leases the unit from the owner.

**Voucher program.** The Section 8 housing choice voucher program. Under this program, HUD provides funds to a PHA for rent subsidy on behalf of eligible families. The tenancy under the lease will be assisted with rent subsidy for a tenancy under the voucher program.

# I have received parts B and C of the HAP contract.

*RH*

RH

# Landlord Certification of Responsibility

**Housing Choice Voucher and Shelter Plus Care Programs**

Columbus Metropolitan Housing Authority
(CMHA)

Re:   1539 Republic Avenue

---
Street Address of Assisted Unit

| Columbus | Ohio | 43211 |
|---|---|---|
| City | State | Zip Code |

1.  I certify that I am the legal or the legally designated agent for the above referenced unit, and that the tenant has no ownership in this dwelling.

2.  I understand that I should carefully screen the family for suitability for tenancy, including the family's background with respect to such factors as rent and utility payment history, caring for unit and premises, respecting the rights of others to the peaceful enjoyment of their housing, and drug-related and criminal activity that is a threat to the life, safety, or property of others.

3.  I understand that I may collect a security deposit from the tenant that is not in excess of private market practice, or in excess amounts that I charge to unassisted tenants.

4.  I understand my obligation to offer a lease to the tenant and that the lease may not differ in form or content from any other lease that I am currently using for any unassisted tenants.

5.  I understand that the family members listed on the Housing Assistance Payments Contract are the only individuals permitted to reside in the unit. I understand that CMHA and I must grant prior written approval for other persons to be added to the household. I understand that I am not permitted to live in the unit while I am receiving housing assistance payments.

6.  I agree to comply with all requirements contained in the lease, tenancy addendum, Housing Assistance Payments Contract, parts A, B and C. I understand that it is imperative that I fully understand the terms and conditions of the lease, tenancy addendum, and the HAP Contract.

7.  I understand that I must submit to the tenant for their consideration and to CMHA for their review, any new lease or lease or lease revision a minimum of sixty (60) days in advance of the effective date of the lease or lease revision.

8.  I understand that I must provide CMHA with a written request for any rent increase a minimum of sixty (60) days in advance of the increase and in accordance with the provisions of the lease and HAP Contract.

9.  I understand that the tenant's portion of the contract rent is determined by CMHA and that it is illegal to charge any additional amounts for rent or any other item not specified in the lease, which has not been specifically approved by CMHA.

10. I understand that I may not lease a unit to my family members, including all occupants, who are related to me in any of the following ways: parent, child, grandparent, grandchild, sister or brother.  I understand that CMHA may grant prior written approval if the rental unit will provide reasonable accommodations for a family member who is a person with disabilities.

11. I understand that I may not assign the HAP Contract to a new owner without the prior written consent of CMHA.

12. I understand my obligations in compliance with the Housing Assistance Payments Contract to perform necessary maintenance so the units continue to comply with Housing Quality Standards.

13. I understand that should the assisted unit become vacant, I am responsible for notifying CMHA immediately in writing.  I also understanding that the HAP Contract and payment will terminate immediately.

14. I understand that I should attempt to resolve disputes between the tenant and me and contact CMHA in writing, only in serious disputes that we are unable to resolve.

15. I understand that I must promptly give CMHA a copy of an owner-eviction notice to the tenant and to comply with all State and local eviction procedures.

16. I acknowledge that I have been briefed on the Section 8 Program.   I understand that my failure to fulfill the above may result in the withholding, abatement, or termination of housing assistance payments for the contract unit or another unit; and or being barred from participating in CMHA housing programs.

17. I understand that knowingly supplying false, incomplete, or inaccurate information is punishable under Federal or State Criminal Law.


*Ryan Hale*
Ryan Hale (Mar 29, 2021 15:05 CDT)
_____
Signature of Owner/Agent

Mar 29, 2021
_____
Date


**Warning:  Title 18, US Code Section 1001, states that a person who knowingly and willingly make false or fraudulent statements to any Department or Agency of the United States is guilty of a felony.  State law may also provide penalties for false of fraudulent statements.**

SOUTHERN DISTRICT OF NEW YORK
500 Pearl Street
New York, N.Y. 10007

Case No. _____

Tasha Chapman
        Pro Se Plaintiff,
            v.
U.S. Department of Housing and Urban Development  ("HUD"), et. al.,
451 7th Street
S.W., Washington, DC 20410
Telephone: (800) 927-9275

# PLAINTIFF EX. 2

 COLUMBUS METROPOLITAN HOUSING AUTHORITY 

## Housing Choice Voucher Program

### 1st Request for Additional Information

12/28/2023

Tasha Chapman
1539 Republic Av
Columbus, OH 43211

As of today's date we have not been able to complete your annual/interim review. Please provide the documentation listed below and attach this form when submitting these documents.  You may submit this information directly to my email or drop the documents off at the CGI office.

This information is due within the next 10 calendar days and must be dated within 60 days of the date of this notice.

Please complete the enclosed declaration page and if Ameer and Daoud are still in the household, include them on the form.  If they are no longer in the household, please provide a letter from your landlord or an updated lease showing that they are no longer in the home.
Please provide most current Chime checking statement.

Please remember, if you do not provide all of the above listed documentation it can result in termination from the Housing Choice Voucher Program.

If you have any questions regarding this matter, please call me at 380.236.0437 or email at felicia.Holland@housing.systems.

Sincerely,

Felicia Holland
Housing Specialist



 **COLUMBUS METROPOLITAN HOUSING AUTHORITY**
COMMUNITY. COMMITMENT. COLLABORATION. 

*Housing Choice Voucher Program*
### Request for Additional Information

Date: 1/23/2024                                                    Client #: 297859

Tasha Chapman
1539 Republic Av
Columbus, OH 43211

Subject: SECOND & FINAL REQUEST FOR ADDITIONAL INFORMATION
Dear Participant Family:
Please be aware that as of the date of this letter, CGI has not received all the required documents to complete your annual reexamination.

In order to continue to receive Section 8 Housing Choice Voucher (HCV) rental assistance, you must comply with the program's family obligations, specifically 24 CFR 982.551 (c)(2) that requires all participants to supply any information requested by CMHA/CGI or HUD for use in a regularly scheduled reexaminations of family income and composition. Failure to provide requested information is cause for termination of assistance under 24 CFR 982.552 (c)(1)(i).

To complete your annual reexamination a **Mandatory** appointment has been scheduled for you.

---

**YOUR APPOINTMENT IS: 2/8/2024 at 8:15AM - 9:15AM.**
Location: CGI/CMHA
107 S. High St. – 2nd floor
Columbus, Ohio 43215

**PARKING INFORMATION**

Validated parking is available for short-term parking at SP + Parking Garage located on Wall St (off State St immediately under 107 S High), Columbus, Ohio 43215. Inform the garage attendant you are visiting the CGI office, you will receive a ticket to be validated by CGI.

---

**You must bring the following information/documents to your appointment:**

Please complete the enclosed declaration page and if Ameer and Daoud are still in the household, include them on the form. If they are no longer in the household, please provide a letter from your landlord or an updated lease showing that they are no longer in the home.
Please provide most current Chime checking statement.

This appointment may last approximately one hour. If you are disabled, you may request a reasonable accommodation to assist you with any aspect of the annual recertification process. Indicate your request if such accommodation is needed by contacting us at 833-378-2220 or by email at cmha.mycase@housing.systems at least five (5) business days prior to your appointment.

Please remember, if you do not provide all of the above listed documentation you will receive an application denial or program termination notice.



| CGI Federal Inc. | 107 S. High St, 2nd FL | Columbus, OH 43215 |
|---|---|---|
| | Main Number 833.378.2220 | TTY: 800.750.0750 |



 **COLUMBUS METROPOLITAN HOUSING AUTHORITY**
COMMUNITY. DEVELOPMENT. COLLABORATION.

 **CGI**

---

## Housing Choice Voucher Program

**TERMINATION NOTICE**

| Client#:297859 | Vendor: L193201 |
|---|---|
| Client Name:Tasha Chapman | Landlord Name: R & A Properties of Ohio LLC |
| Client Addres:<br>1539 Republic Av<br>Columbus, OH 43211 | Landlord Address:<br>c/o Ryan Hale<br>2328 Amhearst Lane<br>Flowermound, TX 75028 |

**3/27/2024**

Dear Participant,

This written notice is to advise you that your participation in the Section 8 Housing Choice Voucher (HCV) Program is being **TERMINATED effective** <u>**04/30/2024**</u>

The reason for this termination is as follows:

Obligation of the Family, which is based on the CMHA Administrative Plan and HUD regulations, you are in violation of the following program requirement: The family must supply any information that the PHA or HUD determines to be necessary, including evidence of citizenship or eligible immigration status and information for use in a regularly scheduled reexamination or interim reexamination of family income and composition. (24CFR982.551 Obligations of Participant; 24CFR 982.552 Termination of Assistance).

Specifically, you have failed to provide all of the required information that was requested on multiple occasions.

**If it is determined that CGI overpaid assistance on your behalf, you may repay the overpayment in increments pursuant to a written agreement between you and CMHA.**

Respectfully,


<u>Josephine Spencer</u>
josephine.spencer@housing.systems
(380) 236-0459

---

| CGI Federal Inc. | 107 S. High St, 2nd FL | Columbus, OH 43215 |
|---|---|---|
| Email Address:<br>cmha.hcv@housing.systems | Main Number<br>833.378.2220 | TTY: 800.750.0750 |

